**Dennis R. HOLTHAUS,
Plaintiff–Appellant,**

**v.**

**BOARD OF EDUCATION, CINCINNATI PUBLIC SCHOOLS; Lee Etta Powell, Doctor, Superintendent in her official capacity, Cincinnati Public Schools, Defendants–Appellees.**

**No. 92–3422.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 25, 1993.

Decided March 2, 1993.

Robert C. Cetrulo, Covington, KY, Mark A. MacDonald (argued and briefed), Lindhorst & Dreidame, Cincinnati, OH, Stephen T. McMurtry, McMurtry & Wolff, Covington, KY, for plaintiff-appellant.

David T. Croall (argued and briefed), James K.L. Lawrence, Frost and Jacobs, John J. Finnigan, Jr., McCaslin, Imbus & McCaslin, Cincinnati, OH, for Board of Educ., Cincinnati Public Schools.

David T. Croall, James K.L. Lawrence, Frost and Jacobs, John P. Concannon, Cincinnati, OH, for Lee Etta Powell, Doctor, Superintendent in her official capacity, Cincinnati Public Schools.

Before: KENNEDY and GUY, Circuit Judges; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Plaintiff Dennis Holthaus appeals the district court's grant of summary judgment in favor of defendants Cincinnati Board of Education ("School Board") and Dr. Lee Etta Powell in her official capacity as Superintendent of Schools. Suing under 42 U.S.C. § 1983 (1988), Holthaus claims that his constitutional right under the Fourteenth Amendment to substantive due process was violated when defendants terminated his one year high school football supplemental coaching contract. Because we determine that defendants did not infringe an interest implicating substantive due process, we AFFIRM the district court's grant of summary judgment.

I

Holthaus contracted to be head varsity football coach at Aiken High School during the 1989–90 school year. At that time, Holthaus had taught in the Cincinnati Public School District for seventeen years and had served many years as an assistant football coach before becoming the head football coach at Aiken in 1986. He also taught driver education.

Aiken High School has an enrollment exceeding 1,500 students. Approximately 75% of Aiken students are Black, but the staff is about 75% white. The school had a history of racial tension and race relations problems.

Before the 1989 football season started, Aiken's football team engaged in the customary August "two-a-day" practice sessions. Damon Flannigan, the team captain who is Black, informed Holthaus that the team did not want to be perceived by the community as "rowdy ... niggers." Thereafter, during a practice session, in an apparent effort to motivate the team to practice harder, Holthaus told the players, "Now you are acting like you didn't want to act. Now you are starting to act like a bunch of niggers."

Because of that remark, the School Board, after a hearing, terminated Holthaus' supplemental 1989–90 coaching contract though he continued to teach driver education.[1] In response, Holthaus requested a hearing before an independent referee to which he was entitled. After a two-day hearing, the referee recommended that Holthaus be reinstated and that this incident be expunged from his record. The School Board, however, rejected the referee's recommendation. Holthaus appealed the Board's decision, and then, in a pro-

---

1. The Board found that Holthaus' conduct constituted "immorality, willful and persistent violation of rules and regulations of the Board...."

ceeding in state Common Pleas Court, he was basically awarded back pay with benefits and reinstatement, when feasible, as football coach.[2]

Meanwhile, Holthaus initiated the present action under § 1983 and state law, alleging, *inter alia*, that the Board's actions violated his constitutional right to substantive due process under the Fourteenth Amendment. The district court granted summary judgment for the defendants on the claims brought under § 1983 and dismissed the state law claims "for lack of jurisdiction." Holthaus appealed, contending only that his discharge from his position as football coach amounted to a violation of substantive due process.

### II

■ This court reviews a grant of summary judgment *de novo*, making all reasonable inferences in favor of the non-moving party. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

### III

■ In *Ramsey v. Board of Education of Whitley County, Kentucky*, 844 F.2d 1268 (6th Cir.1988), and in *Charles v. Baesler*, 910 F.2d 1349 (6th Cir.1990), this court held that a breach of contract by a public employer does not give rise to a claim by its employee under § 1983 for a denial of substantive due process. Moreover, in *Sutton v. Cleveland Board of Education*, 958 F.2d 1339, 1351 (6th Cir.1992), this court held that a claim by a public employee for improper discharge from employment cannot be brought under the substantive due process component even though the employment contract provides that the employee could only be discharged for just cause.

Holthaus attempts to circumvent the rule stated in *Charles, Ramsey*, and *Sutton* by recharacterizing the School Board's action. Holthaus asserts that rather than simply terminating his employment, the Board discharged him "by [improperly] charging him with immorality and willful violations of School Board rules, which, if true, would seriously impugn his character, undermine his associations, and damage his ability to seek employment elsewhere as a head coach." In short, Holthaus contends that his claim is properly asserted as a violation of his substantive due process rights because of the defamatory nature of the School Board's charges and findings.

In support of this theory of his case, Holthaus relies primarily on *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Initially, we note that *Roth* is not a substantive due process case; it is clearly a procedural due process case. There the plaintiff, Roth, had a one year contract to teach in a state university and, as it was entitled to do under the terms of the contract, the university informed Roth, before his term of employment ended, that his contract would not be renewed at the end of the year. Further, as it was entitled to do under the terms of the contract, the university gave no reason for not renewing Roth's contract. Further, it gave Roth no opportunity to challenge the decision not to continue his employment. Roth sued in district court for declaratory and injunctive relief, contending that the university's failure to give him notice of the reasons for not continuing his contract and an opportunity to be heard was a denial of procedural due process. The District Court granted summary judgment to Roth on the procedural due process issue, ordering the university to grant Roth a hearing and to provide reasons for his nonretention. 310 F.Supp. 972 (W.D.Wis. 1970). The Court of Appeals affirmed. 446 F.2d 806 (7th Cir.1971). The Supreme Court reversed, holding that Roth was not entitled to notice and an opportunity to be

**2.** By the time this cause was argued in this court, it appears from statement of counsel that, on appeal, the state Court of Appeals reduced Holthaus' relief to an award of $2384 damages, which is the salary he lost for that part of the year he did not complete as coach.

heard because procedural due process protects interests that a person has acquired in specific benefits, Roth was not deprived of a liberty interest since no stigma had been imposed upon him in failing to continue his employment and was deprived of no property interest since the terms of employment were that he was employed only for one year.

We recognize that the very theory of Holthaus' lawsuit is that, indeed, the circumstances of the termination of his one year coaching contract *did* cast a stigma on his name that would affect his other employment opportunities. Even so, *Roth* makes clear that this would only amount to a denial of procedural due process even if Holthaus had not been given an opportunity to be heard. Holthaus, as has been seen, has been given abundant opportunities to be heard, not only before the defendant Board of Education but also before a referee and in a state trial and appellate court, the result of which was that Holthaus prevailed and received damages for his unlawful discharge during the year of his contract to coach football.

For completeness, we point out that *Paul v. Davis*, 424 U.S. 693, 709, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976), indicates, in *dicta*, that official action terminating government employment that creates a stigma to the name of the employee would be a violation of the right to *procedural* due process if no notice and opportunity to be heard were given. It does not hold that, even if, as here, notice and opportunity were given, such termination of employment could be a violation of substantive due process. See, to the same effect, *Thompson v. Scheid*, 977 F.2d 1017, 1020 (6th Cir.1992).

Accordingly, we conclude that the district court did not err in granting summary judgment to the defendants below.