930 F.Supp. 410 (1996)
Denis M. REINHART, Plaintiff,
v.
CITY OF MARYLAND HEIGHTS, Richard Goldberg, John Pellet, Glenn Bourbon, Dan Johnson, Michael Moeller, and Michael T. O'Brien, Defendants.
No. 4:95CV487-DJS.
United States District Court, E.D. Missouri, Eastern Division.
June 14, 1996.
*411 Robert Herman, Schwartz and Herman, St. Louis, MO, Newton G. McCoy, St. Louis, MO, for Denis M. Reinhart.
Ruth A. Pryzbeck, Kleinschmidt and Pryzbeck, St. Louis, MO, Howard Paperner, St. Louis, MO, for City of Maryland Heights.
Ruth A. Pryzbeck, Kleinschmidt and Pryzbeck, St. Louis, MO, for Richard Goldberg, John Pellet, Glenn Bourbon, Dan Johnson, Michael Moeller, and Michael T. O'Brien.

ORDER
STOHR, District Judge.
Plaintiff Denis Reinhart brings the instant action pursuant to 42 U.S.C. § 1983 against the City of Maryland Heights, Missouri, Maryland Heights City Councilmen Richard Goldberg, John Pellet, Glenn Bourbon, Dan Johnson and Michael Moeller, and Maryland Heights Mayor Michael T. O'Brien. The first amended complaint alleges that defendants *412 violated plaintiff's due process and free speech rights. The suit arises out of plaintiff's removal from the city's Board of Police Commissioners on September 1, 1994, by vote of the five councilmen named as defendants herein.
In Count I of the first amended complaint, plaintiff asserts a violation of his substantive due process rights, based on the early termination of his three-year term of office and the resulting "public embarrassment, distress and humiliation," and injury to plaintiff's "good name, reputation, honor and integrity." First Amended Complaint, ¶ 18 & ¶ 19. Count II asserts that plaintiff's removal from office, on the basis of statements plaintiff was alleged to have made during a closed meeting of the Police Board on May 10, 1994, was in violation of his rights of free speech pursuant to the First and Fourteenth Amendments. The matter is now before the Court on defendants' motion to dismiss or for summary judgment.

Substantive Due Process
Plaintiff's first amended complaint clearly asserts a substantive, rather than a procedural, due process claim. Nonetheless, the Supreme Court decisions upon which defendants chiefly rely in challenging plaintiff's due process claim, Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), are procedural due process cases, as is by implication, the Eighth Circuit case of Green v. St. Louis Housing Authority, 911 F.2d 65 (8th Cir. 1990). The Court also observes, however, that plaintiff's memorandum in opposition to defendants' motion fails to address his substantive due process claim other than in a conclusory footnoted paragraph in its summation, and that the introductory paragraph to the "Argument" section of plaintiff's memorandum specifically contends only that defendant's motion is without merit to the extent that it challenges Count II, plaintiff's free speech claim.
The Court's analysis of the substantive due process claim therefore proceeds largely sua sponte, in view of the inadequacy of the parties' treatment. In Holthaus v. Board of Education, 986 F.2d 1044 (6th Cir.1993), the Sixth Circuit reviewed its prior case law holding that a public employee's claim for improper discharge did not give rise to a substantive due process claim, and affirmed summary judgment against a high school football coach who claimed that his discharge for an allegedly improper racial remark violated his rights of substantive due process. The Holthaus court also rejected the plaintiff's reliance on Roth, distinguishing it as a procedural due process case, and in so doing held that termination causing stigmatization and injury to reputation, such as that upon which plaintiff's claim is here based, does not support a claim of substantive, as opposed to procedural, due process. Holthaus, 986 F.2d at 1047.
A frequent characterization of substantive due process is that it is violated where public officials "act arbitrarily or capriciously," or in a manner which is not "a rational means of advancing a legitimate government purpose." See, e.g., Fowler v. Smith, 68 F.3d 124, 128 (5th Cir.1995). Viewed on that standard, even the facts as alleged by plaintiff do not, in the Court's view, constitute a violation of substantive due process. By plaintiff's own account, the City Council acted on the basis of findings and conclusions issued by hearing examiner Mark Neill, following a hearing in which plaintiff participated. These included a finding that, during a closed meeting of the Board of Police Commissioners, in the context of discussion concerning the dress and appearance of police officer candidates, plaintiff "stated that as far as he was concerned female police applicants could show up for their interviews nude." Pltf.Memo. in Opp., p. 4.
The hearing examiner went on to find that the evidence did not support a conclusion that plaintiff's remark was made in a lascivious manner. Nonetheless, even if, as plaintiff contends, the hearing examiner's findings are erroneous as to the content of his remark, the defendant council members' reliance upon findings made by a neutral examiner after a hearing cannot be characterized as arbitrary or capricious. If persuaded that plaintiff had made the statement as found by the examiner, the defendant council members could also reasonably reject the examiner's *413 innocent interpretation of the remark, or accept the interpretation but nonetheless conclude that the remark indicated a lack of sound judgment on the part of plaintiff, so that his removal from office would be in the public interest. Such analysis would constitute a rational means of advancing a legitimate governmental interest.
Finally, the motion removing plaintiff from office, supported by the votes of the defendant council members, was expressly based on concerns about plaintiff's credibility. The concerns referred to apparently were based on the fact that the hearing examiner was not persuaded by plaintiff's own account of his remarks. Defendants' votes in favor of plaintiff's removal from office, to the extent based on a concern for plaintiff's lack of credibility, are also, as a matter of law, not arbitrary or capricious. Integrity is indisputably an appropriate consideration for fitness for public office, and a good faith belief that plaintiff lacked integrity, even if erroneous or subject to dispute, would be a sound and rational basis for the votes cast by the defendant council members.[1]
Furthermore, the Seventh Circuit conditions substantive due process protection against arbitrary and capricious termination from public employment upon the existence of a protected life, liberty or property interest, and specifically holds that "occupational liberty" is not protected by substantive due process. Zorzi v. County of Putnam, 30 F.3d 885, 894-5 (7th Cir.1994). The Eleventh Circuit has recently examined Supreme Court jurisprudence and found that it yields a similar result:
Supreme Court precedent demonstrates that an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component. Because employment rights are state-created rights and are not "fundamental" rights created by the Constitution, they do not enjoy substantive due process protection.
McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir.1994). The Sixth Circuit is in accord. See Sutton v. Cleveland Board of Education, 958 F.2d 1339, 1350-51 (6th Cir.1992) [holding that even "a statutory right to be discharged only for cause is not a fundamental interest protected by substantive due process"]. These principles provide an additional basis for summary judgment against plaintiff on Count I.
For all the foregoing reasons, even viewing the facts and the inferences from the facts in the light most favorable to plaintiff, the Court concludes that defendants are entitled to judgment as a matter of law on plaintiff's substantive due process claim. Defendants' motion will therefore be granted as to Count I of the first amended complaint.

Free Speech
The Supreme Court has held that "a State cannot condition public employment on *414 a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). Connick sets out a two-pronged test for determining whether particular speech by a public employee is protected under the First Amendment. To be protected under the Connick test, the speech must be "on a matter of public concern." Buzek v. County of Saunders, 972 F.2d 992, 995 (8th Cir.1992). Second, "the interests of the [employee], as a citizen, in commenting upon matters of public concern [must outweigh] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968), quoted in Connick, 461 U.S. at 142, 103 S.Ct. at 1687.
Although both prongs of this test are questions of law to be addressed by the Court, Connick at 150, n. 10, 103 S.Ct. at 1692, n. 10, where there exist underlying factual disputes which affect whether the plaintiff's speech is protected under the test, the fact disputes are to be "submitted to the jury through special interrogatories or special verdict forms." Shands v. City of Kennett, 993 F.2d 1337, 1342 (8th Cir.1993). On the record now before the Court, there exists a genuine dispute of fact as to the nature and substance of plaintiff's alleged remarks concerning police officer applicants appearing nude.[2] The dispute prevents the Court from making final determinations as to whether plaintiff's remarks were on a matter of public concern and as to the relative interests of plaintiff and the City Council in the matter.
If, for the sake of argument, the Court assumes without deciding that plaintiff's speech was protected by the First Amendment, the burden rests on the plaintiff to "show that the protected speech was a substantial, or motivating, factor in the defendant[s'] decision to discharge him." Shands, 993 F.2d at 1343; Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). On this point, plaintiff fails to support his claim. Defendants support their claim that the content of plaintiff's speech was not the basis for their votes to remove him by reference to the express nature of the motion on which they voted, which premised the action on the basis of plaintiff's lack of credibility during the preliminary hearing, as found by the hearing examiner.
Although the Court is not persuaded by defendants' argument that Missouri's parol evidence rule applies in this context to bar any extrinsic evidence challenging the basis for the motion as expressed in the City Council minutes, the Court nonetheless observes that plaintiff has failed to come forward with any evidence which would support a finding that the content of his remark was a substantial and motivating factor in his removal, contrary to the express language of the motion.[3] Plaintiff's reliance on the fact of the City Council's investigation, by way of the preliminary hearing before the hearing examiner, into the nature and substance of plaintiff's remarks is not probative of the motivation of those council members who voted in favor of plaintiff's ouster. Because it appears that plaintiff lacks evidence to support his position on the final causation element of his First Amendment claim, the Court concludes that defendants are entitled to judgment as a matter of law on Count II of the first amended complaint.
*415 In addition, the Court notes the possibility that different standards might govern plaintiff's free speech claim than the Connick/Pickering/Mt. Healthy rubric on which the parties have relied. Because both plaintiff and the defendant council members acted as appointed or elected public officials, with public policymaking authority, the public employee analysis may be inapposite. If so, it appears to the Court that the applicable analysis could only weigh even more strongly in favor of summary judgment for defendants, for the following reasons. First, as a political appointee, plaintiff must reasonably expect the possibility of political repercussions for his speech, especially when on subjects of public concern and/or in the course of his duties. The scrutiny of such speech by both the public and other officials with authority over plaintiff is an integral part of the political process, as is the potentially adverse reaction of either the voting public or the appointing/disciplinary authority, as the case may be.
Second, where as here those decision-makers responsible for plaintiff's removal from office themselves acted to remove him by the casting of their vote as elected public officials, their conduct in so doing is itself protected by the First Amendment. See Miller v. Town of Hull, Mass., 878 F.2d 523, 532 (1st Cir.1989) ["[T]he act of voting on public issues by a member of a public agency or board comes within the freedom of speech guarantee of the first amendment."] Neither party has addressed any of the issues raised by the status of both plaintiff and defendants as public officials, and not mere public employees, and the Court has found no cases directly on point. To the extent that the distinction makes a difference, however, the Court here notes its conclusion that the difference would only bolster the entry of summary judgment in defendants' favor on plaintiff's First Amendment claim.

Qualified Immunity
The individual defendants assert qualified immunity as a basis for summary judgment in their favor. A public official is entitled to qualified immunity shielding him from liability in damages when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Because the Court finds as a matter of law that plaintiff's substantive due process claim is without merit, it does not address the availability of qualified immunity on that issue. As an alternative basis for summary judgment in the individual defendants' favor on the free speech claim, the Court holds that they are entitled to qualified immunity.
In the same First Amendment context, the Eighth Circuit has noted that "[t]he qualified immunity defense must provide `ample protection to all but the plainly incompetent or those who knowingly violate the law.'" Buzek, 972 F.2d at 997, quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The Court of Appeals further observed:
To provide that ample protection in this context, the employer's justification for the discipline must be taken into account in determining whether the defendants' conduct was objectively reasonable, that is, whether a "reasonably competent officer would have concluded" that the discipline could be imposed without violating the employee's First Amendment rights. Id. Therefore, when Pickering's fact-intensive balancing test is at issue, the asserted First Amendment right "can rarely be considered `clearly established' for purposes of the Harlow qualified immunity standard." Bartlett v. Fisher, 972 F.2d 911 (8th Cir. 1992).
Buzek, 972 F.2d at 997.
On the record in this case, particularly in view of the findings of the hearing examiner which constituted the record evidence available to the City Council in determining whether to remove plaintiff from the Police Board, the Court readily concludes that the defendant Council Members who voted in favor of the motion premising plaintiff's removal on issues of credibility reasonably could have concluded that plaintiff could be removed without violating his First Amendment rights. In the alternative, then, these defendants are entitled to summary judgment *416 on the ground of qualified immunity, to the extent that Count II seeks damages from them in their individual capacities.

Liability of the City and Mayor
The City initially argues that plaintiff's pleading fails to state a claim against the City under § 1983 because respondeat superior principles do not apply in this context. Plaintiff aptly responds that the facts of this case, involving the action of the City Council, present just the type of official action on the part of municipal officials which may give rise to the city's liability under § 1983:
Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.
Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978). As the Supreme Court stated in Pembaur v. Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986):
No one has ever doubted ... that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body  whether or not that body had taken similar action in the past or intended to do so in the future  because even a single decision by such a body unquestionably constitutes an act of official government policy.
The City's argument on this point is without merit.
Nonetheless, given the Court's disposition of the underlying claims against the individual City Council members as a matter of law, the City is entitled to summary judgment as well. Plaintiff's claims against defendant Mayor Michael O'Brien, to the extent that he is sued in his official capacity, are for all intents and purposes asserted against the City itself. Will v. Michigan Department of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). These claims are also subject to judgment as a matter of law.
Finally, although the first amended complaint names Mayor O'Brien in his individual capacity as well, the complaint contains no allegations concerning O'Brien's conduct other than his appointment of plaintiff to the Police Board. Individual liability of government officials under § 1983 must be predicated on "a causal connection between the misconduct complained of and the official sued." Harris v. Pirch, 677 F.2d 681, 685 (8th Cir.1982), quoted with approval in Wilson v. City of North Little Rock, 801 F.2d 316, 322 (8th Cir.1986). Because no such causal connection to plaintiff's removal is alleged with respect to defendant O'Brien, no claim is stated against him in his individual capacity.

Conclusion
For all the foregoing reasons, the Court will grant defendants' motion to dismiss or for summary judgment. Defendants' motion to compel discovery, filed May 17, 1996, will be denied as moot in view of plaintiff's unopposed response thereto as well as the disposition of the action by summary judgment. Defendants' supplemental motion for summary judgment, raising an issue of mootness as to plaintiff's prayer for reinstatement to the Board, will also be denied as moot in view of the disposition of plaintiff's claims on the merits. Accordingly,
IT IS HEREBY ORDERED that defendants' motion to dismiss or for summary judgment [Docs. # 19-1 and # 19-2] is granted.
IT IS FURTHER ORDERED that defendants' motion to compel discovery [Doc. # 35] is denied as moot.
IT IS FURTHER ORDERED that defendants' supplemental motion for summary judgment [Doc. # 38] is denied as moot.
NOTES
[1] As the Court's analysis indicates, a substantive due process challenge does not require or authorize the Court's de novo consideration of the underlying facts and circumstances and the correctness or advisability of plaintiff's removal from office. Instead, the substantive due process standard requires a determination whether, on the record before them and in the context in which they acted, the action taken by the defendant council members was arbitrary and capricious and so violated the minimal standards imposed by due process. The following excerpt from Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), is apropos of this distinction:

Petitioner argues, however, that the reasons given for his discharge were false ... The truth or falsity of the City Manager's statement determines whether or not his decision to discharge the petitioner was correct or prudent, but neither enhances nor diminishes petitioner's claim that his constitutionally protected interest in liberty has been impaired. A contrary evaluation of his contention would enable every discharged employee to assert a constitutional claim merely by alleging that his former supervisor made a mistake.
The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error ... The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.
Id. at 349-50, 96 S.Ct. at 2080.
[2] Plaintiff attests that the only statement he made in the context of applicants' dress was to the effect that "if we were going to grade on appearance the only way to be fair to everyone would be to have them all come nude," and that his comment was "in regard to all job applicants and was not directed to female applicants." Pltf. Affidavit, p. 4.
[3] Although plaintiff's initial response to defendants' motion, filed in August of 1995, invoked Fed.R.Civ.P. 56(f) and stated that discovery had not been completed on this issue, more than sufficient time has elapsed for the completion of discovery, which was to close on January 2, 1996, pursuant to the Case Management Order entered June 5, 1995. Plaintiff has not filed, nor sought leave to file, any supplemental materials in support of his opposition to summary judgment.