## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 31, 2009

Charles R. Fulbruge III
Clerk

No. 08-50414

CARL O'NEAL, SR, Individually; GEORGIE MAE O'NEAL, Individually and
on behalf of the Estate of Carl James O'Neal, Jr, Deceased,

Plaintiffs - Appellants

v.

CITY OF SAN ANTONIO; WILLIAM MCMANUS, Chief of the San Antonio
Police Department, Individually and in his Official Capacity; OFFICER
DALE HANCOCK, Badge #0564, Individually and in His Official Capacity;
OFFICER MARK STANUSH, Badge #1378, Individually and in His Official
Capacity,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:06-CV-725

Before JONES, Chief Judge, KING and ELROD, Circuit Judges.

PER CURIAM:[*]

This case is an appeal from the district court's grant of summary judgment

to the City of San Antonio and officers of the San Antonio Police Department

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5th Cir.
R. 47.5.4.

(S.A.P.D.) in an action brought under 42 U.S.C. § 1983 by the family and estate of Carl James O'Neal. We affirm.

## I. FACTS AND PROCEEDINGS

S.A.P.D. Officers Hancock and Stanush stopped Carl James O'Neal Jr. for a traffic violation on November 10, 2005. After they placed him in handcuffs, the officers noticed that O'Neal had a substance in his mouth that appeared to be crack cocaine that he was chewing. The officers attempted to force Neal to spit out the substance but were unsuccessful. O'Neal told the officers that one of the women in the vehicle with him had thrown a piece of crack cocaine at him and that put it in his mouth because he was scared. Upon inspection of the vehicle, the officers discovered a rock of crack cocaine. The officers arrested O'Neal. In the struggle, O'Neal apparently suffered minor abrasions to his face. The officers transported O'Neal to the Acute Care Clinic and Crisis Center ("clinic") in downtown San Antonio to get medical clearance before processing him. The officers took this action pursuant to a recent change in S.A.P.D. policy for the medical treatment of arrestees. The new policy, implemented in 2005, allowed police officers to transport arrestees who had minor injuries to the clinic rather than taking them to the University Hospital.

On the way to the clinic, O'Neal began making grunting noises. Upon arrival at the clinic, O'Neal had difficulty exiting the patrol car and required the assistance of the officers. O'Neal fell out of the patrol car and required further assistance up the two flights of stairs to the clinic. As he entered the clinic, O'Neal was screaming loudly. When the clinic staff attempted to take O'Neal's blood pressure, he began thrashing about. The officers and clinic staff attempted to hold him down and eventually placed ankle irons on him and handcuffed him to a wheelchair. The clinic staff told the officers that O'Neal could not be treated at the clinic and needed to be taken to the University Hospital Emergency Room. While waiting for transportation for O'Neal, Officer Hancock noticed that he did

not seem to be breathing. The physician's assistant approach and could not find a pulse; EMS pronounced him dead at the scene. In 2007, after events here, the City changed its policy on the treatment of arrestees who had ingested street drugs. Under the new policy, officers are prohibited from taking individuals who had ingested narcotics to the clinic.

In the live complaint,[1] O'Neal's family and estate sued the City of San Antonio, William McManus, Chief of Police for the City of San Antonio, and Officers Hancock and Stanush under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment. Pursuant to 28 U.S.C. § 636, the district court referred all pretrial matters to the magistrate judge for disposition. All defendants moved for summary judgment. In a thorough memorandum and recommendation, the magistrate judge recommended dismissal of all claims. The district court accepted this recommendation in full and granted the defendants' motion for summary judgment and dismissed the lawsuit. Appellants' sole claim on appeal is their § 1983 claim against the City and Officers Hancock and Stanush.[2]

## II. DISCUSSION

### A.    *Standard of Review*

This court reviews the district court's grant of summary judgment *de novo*, applying the same standard of review as the district court. *FDIC v. Ernst & Young*, 967 F.2d 166, 169 (5th Cir. 1989). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

---

[1] The live complaint is the third amended complaint.

[2] Appellants do not challenge the district court's grant of summary judgment to Chief McManus; we will not consider this argument on appeal. *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000).

*Catrett*, 477 U.S. 317, 322 (1986). We draw all inferences most favorable to the party opposing the motion. *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). However, the non-movant's burden is not satisfied with "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). We review evidentiary rulings for abuse of discretion and will "reverse a district court's ruling only if it affects a substantial right of a party." *Caparotta v. Entergy Corp.*, 168 F.3d 754, 755-56 (5th Cir. 1999).

### B.     O'Neal's Claims Against the City

A government entity may be held liable under 42 U.S.C. § 1983 if the entity's policy or custom inflicts a constitutionally cognizable injury. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). In order to prevail on a municipal liability claim, a plaintiff must show "(a) that the policy itself violated federal law or authorized the deprivation of federal rights or (b) that the policy was adopted or maintained  by the municipality's policymakers with deliberate indifference as to its known  or obvious consequences." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004). Simple negligence or even heightened negligence will not support liability. *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). In addition, the policymaker must have either actual or constructive knowledge of the alleged policy. *See Cox v. City of Dallas, Tex.*, 430 F.3d 734, 748 (5th Cir. 2008).

Inadequacy of police training can serve also serve as the basis for municipal liability under  § 1983, but only if the failure to train amounts to a deliberate indifference to the rights of individuals who come into contact with the police. *City of Canton*, *Ohio v. Harris*, 489 U.S. 378, 388 (1989). This court has held that if the training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that "this legal minimum of training was inadequate to enable [the officers] to deal with the

'usual and recurring situations' faced by jailers and peace officers." *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992).

Appellants claim that the court below abused its discretion by refusing to consider the 2007 revisions to City's policy for the treatment of arrestees. The court below determined that Federal Rule of Evidence 407 barred the use of the policy change as a subsequent remedial measure. Appellants argue on appeal that the policy change contradicts the City's assertion that the clinic was an appropriate place to take O'Neal and thus may be introduced for impeachment purposes. We find that the court below did not abuse its discretion in refusing consider the change in policy. This Circuit has held that "the trial judge should guard against the improper admission of evidence to prove prior negligence under the guise of impeachment." *Hardy v. Chemetron Corp.,* 870 F.2d 1007, 1011 (5th Cir. 1989). We cannot say that the court below abused its discretion in erring on the side of caution with respect to this evidence.[3]

The appellants further claim that the 2005 policy change created an "informal" policy that encouraged officers to take all detainees to the clinic, regardless of their medical condition. However, they cite no evidence for their position that this informal policy resulted in almost all detainees being taken to the clinic regardless of medical status. Moreover, the appellants provide no support for their arguments that Officers Hancock and Stanush suspected that O'Neal was suffering or would suffer from an overdose and nevertheless transported him to the clinic pursuant to this informal City policy. Officers Hancock and Stanush indicated in their affidavits that O'Neal displayed no signs of medical distress at the time of his arrest. Dr. Vincent DiMaio, the defendants'

---

[3] In their brief to this court, appellants cite the policy change as evidence that the City "recognized that it could not continue to advance a policy that resulted in the death of at least one arrestee." Such language insinuates that the policy change establishes the City's culpability.

expert, testifed that swallowing crack cocaine is a common practice among drug users and only rarely results in adverse reactions of a severe degree. Officer Stanush stated in his deposition that he had seen many people chew crack cocaine and not fall ill as a result. In their brief, appellants present only conclusory statements that the officers "knew" ingestion of crack cocaine created a substantial risk of overdose and death and yet transported him to the clinic in accordance with the informal policy. Bare allegations, without supporting evidence, are insufficient to defeat summary judgment. *See Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 192 (5th Cir. 1990).

Appellants also argue that the City failed to properly train its officers to recognize what medical issues could and could not be treated at the clinic. Appellants reassert their claim that O'Neal was denied adequate medical treatment because of this failure to train, but again do not cite any evidence demonstrating that the officers' training did not meet state standards. The appellants also fail to present any evidence that the City's training fell below the constitutional minimum required under *Benavides*. 955 F.2d 973.

C.     *O'Neal's Claims Against the Officers*

Qualified immunity protects a public official from liability unless a plaintiff has shown a deprivation of a federal right and that the defendant's misconduct violated a "clearly established statutory or constitutional right of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Individuals in the government's custody may have a cause of action under § 1983 if their medical needs are met with deliberate indifference on the part of those detaining them. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 636 (5th Cir. 1996) (en banc). To prevail in a case involving individual or episodic acts, a plaintiff must prove the officers acted with subjective deliberate indifference. *Hare*, 74 F.3d at 636. To prove

subjective deliberate indifference, an arrestee must prove that the officer had subjective knowledge of the risk of harm and the subjective intent to cause harm. *Mace v. City of Palestine*, 333 F.3d 621, 625-26 (5th Cir. 2003). "Mere negligence or a failure to act reasonably is not enough." *Id.* at 626.

Appellants argue that Offices Hancock and Stanush are not entitled to qualified immunity. Yet they fail to provide any evidence indicating that officers Stanush and Hancock were aware of the risk of O'Neal overdosing and ignored that risk. As noted above, the affidavits of Officers Hancock and Stanush and the testimony of Dr. Vincent DiMaio all indicate that the officers were unaware of an excessive risk of an overdose. Appellants respond to this evidence with vague assertions that the officers' experience with crack cocaine meant that they "knew" that O'Neal faced such a risk. Such vague assertions are insufficient to prevail on appeal.

Appellants also argue that the court abused its discretion in refusing to consider the deposition testimony of Nurse O'Leary at summary judgment. Nurse O'Leary indicated that the officers had failed to inform Medical Assistant Castaneda that O'Neal had ingested crack cocaine. After reviewing the record, we conclude that the court below did not abuse its discretion in refusing to consider O'Leary's hearsay statement. Evidence on summary judgment may be considered to the extent it is not based on hearsay or otherwise excludable at the time of trial. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).

Appellants attempt to analogize their case to *Bias v. Woods*, in which the district court found that a prison physician was not entitled to qualified immunity. 2002 WL 1750792, *2, 4 (N.D. Tex. 2002). The plaintiff alleged that under the physician's supervision, he was transported 150 miles in a prison van while in a comatose state. *Id.* at *3 As a result of lying in a prone position for an extended time, the plaintiff developed necrosis in his right hip, leg and buttocks. *Id.* at *3 The district court in that case determined that a reasonable

person would have known that ordering the transport of an unconscious prisoner 150 miles to another prison unit, rather than providing immediate medical attention, would cause a significant delay, if not complete denial of medical care. *Id*. at \*4. We agree with the court below that *Bias* is readily distinguishable from the current case as the appellants here presented no evidence at summary judgment that either officer knew or had reason to know that O'Neal had suffered or was about to suffer an overdose of crack cocaine.

Accordingly, the court below did not err in granting summary judgment. The decision is AFFIRMED.